United States District Court
Southern District of Texas

**ENTERED**

June 09, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON GRANITE AND MARBLE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-4938 |
| | § | |
| DRT TRANSPORTATION LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Defendant LMP Trucking, LLC's (Defendant) Motion for Summary Judgment (Doc. No. 33) and Motion to Dismiss under FRCP 41(b) (Doc. No. 29). Plaintiff Houston Granite and Marble (Plaintiff) responded to the Motion for Summary Judgment (Doc. No. 39) and Defendant replied. (Doc. No. 44 & 45). Defendant also filed a Motion to Strike Plaintiff's Untimely Response (Doc. No. 43). In addition, Defendant filed a Motion for Leave to file Additional Discovery. (Doc. No. 32). The Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment. (Doc. No. 33).

As an initial matter, the Court would like to remind Plaintiff that it needs to comply with the local rules of the Southern District of Texas. Counsel must respond to an opposed motion within 21 days from the date the motion is filed with the Clerk's Office, and failure to respond to a motion will be taken as a representation of no opposition. S.D. Tex. L.R. 7.3 & 7.4. Nevertheless, in the interest of justice, the Court DENIES Defendant's Motion to Strike (Doc. No. 43). The Court will proceed to rule on the merits but orders the parties to comply with the Federal Rules of Civil Procedure and the local rules moving forward.

1

## I.   Background

Plaintiff contracted with co-defendant DRT Transportation LLC ("DRT") to transport a load of custom pre-cut marble and granite slabs valued at over $250,000 from Plaintiff's Houston facility to its customer in Stillwater, Oklahoma on September 19, 2017. (Doc. No. 1-5 at 3). DRT, acting as a transportation broker, subcontracted the load to Defendant. The contract for carriage and rate confirmation specified that the job was a "no-touch" load, which means Defendant's driver is not responsible for loading or unloading any cargo. (Doc. No. 33-3). Defendant hired Frederick Taylor ("Taylor") to drive the trailer truck. (Doc. No. 33-5 at 1).

At 12:00pm on September 19, 2017, Taylor dropped the trailer off at Plaintiff's facility so that Plaintiff could build wooden crates to secure the cargo and load it. (Doc. No. 33-5 at 1). Plaintiff hired Francisco Pacas ("Fredy" or "Freddie") to assist in fabricating, packaging, and loading the stone in the pallets to be transported by Defendant. According to Fredy, he inspected the pallets of stone once they were loaded onto the trailer and they were in good condition. (Doc. No. 39-2 at 1). At 7:00pm, Taylor returned and put straps across the cargo to secure the crates to his trailer. (*Id.* at 2). Due to his absence during the loading process, Taylor could see only the edges of granite when he inspected the cargo, because the wooden crates obscured the rest of the stone. (Doc. No. 33-5 at 2). Taylor signed and received the bill of lading, signed by Plaintiff as "the shipper," and started his trip. (*Id.*).

At some point along Taylor's trip to Oklahoma, he became aware that his cargo load shifted. According to Taylor, he first stopped in Huntsville, Texas to check on the security of the load and found it was secure. (*Id.*). Before he arrived in Dallas, Texas, however, he felt the load shift and pulled over. (*Id.* at 3). Upon inspection, he saw that two of the four crates had collapsed onto their side. (*Id.*). He contacted Plaintiff, who sent employees to repair the crates and re-load

the cargo. (*Id.*) Since it was a no-touch load, Taylor did not assist in the re-loading, except to secure the cargo straps. (*Id.*). Fredy had been following Taylor from Houston and assisted in the re-loading process. According to Fredy, some of the stone pallets were unsalvageable, but the rest were re-loaded. (Doc. No. 39-2). Taylor has stated that he secured the cargo in compliance with DTO regulations and industry customs and practices, and that he was not negligent in his driving at any point in time. (Doc. No. 33-5 at 3–6). The cargo never fell off the trailer entirely. (*Id.* at 5; Doc. No. 33-6). When Taylor eventually arrived in Stillwater, Oklahoma, the consignee at the drop off location refused to sign the bill of lading. (*Id.* at 4).

Plaintiff filed an amended petition against Defendant and DRT in state court on December 19, 2019, alleging state law claims and Carmack claims for damage to cargo during interstate shipment. (Doc. No. 1-5). Defendant removed the case to this Court. (Doc. No. 1). Since removal, Plaintiff has apparently failed to timely respond to Defendant's discovery requests. Defendant filed a Motion to Compel (Doc. No. 21) which the Court granted. (Doc. No. 24). After Defendant filed a Motion to Dismiss (Doc. No. 29), Plaintiff belatedly provided supplemental responses to discovery. (*See* Doc. No. 33 at 7). Defendant then filed a motion for summary judgment arguing it is entitled to summary judgment on: (1) all Plaintiff's state law claims; (2) Plaintiff's claims under the Carmack Amendment 49 U.S.C. 14706; and (3) the issue of limitation of liability under the Carmack Amendment. (Doc. No. 33). Plaintiff responded (Doc. No. 39). Thereafter, Defendant filed a motion to strike Plaintiff's response. (Doc. No. 43).

## II.   Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III.   Analysis

### A. Defendant's Objections

Before addressing the substance of the summary judgment motion, the Court must first address Defendant's objections, raised in conjunction with its reply brief, to Plaintiff's summary judgment evidence.

#### 1. Fredy's Affidavit

Defendant first objects to the Affidavit of Fredy "on the grounds that Plaintiff failed to comply with FRCP 26(a)(a)(1)(A)(i) and failed to disclose required information concerning [Fredy]." (Doc. No. 44 at 1). In particular, Defendant argues that Fredy's full name has never been disclosed, although he was identified in Plaintiff's answer to Defendant's Interrogatories as the person who "packaged and palleted" and loaded the products onto the trailer. (*Id.* at 2). When

4

determining whether to exclude evidence for failure to comply with Rule 26, the Court looks to: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Tex. A&M Research Found. v. Magna Transp. Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Here, the importance of Fredy's affidavit is undeniably high. Plaintiff relies upon Fredy's affidavit to raise a genuine issue of material fact concerning whether the cargo was in "good condition," a key element of its prima facie case for a Carmack claim. (Doc. No. 39-3). Plaintiff also relies upon Fredy's affidavit to raise a fact issue as to Defendant's affirmative defense to the Carmack claim. (Doc. No. 39-2 at 2). The Court finds that the affidavit's importance favors inclusion of the evidence.

Regarding the prejudice to Defendant and a continuance's impact on curing the prejudice, the Court finds that these factors do not favor either exclusion or inclusion. On the one hand, inclusion of the evidence may play a large role in defeating Defendant's motion for summary judgment. On the other hand, a continuance can help ensure that Defendants are adequately prepared for trial and will not be surprised or ambushed at trial.

Finally, the Court considers the Plaintiff's explanation for failing to comply with the disclosure requirements of Rule 26. While Plaintiff has not offered an explanation outright in its briefing, in its discovery responses, Plaintiff has alluded to the fact, and even stated, that it does not have the pertinent information. In its first response to interrogatories, Plaintiff answered: "The precut products were packaged and palleted by 'Freddie' and loaded onto the defendant LMP's trailer and secured to LMP's trailer by the defendant LMP  Trucking's employee who requested assistance from 'Freddie.' *Freddie's full legal name and address will be supplemented within the*

5

*next thirty days."* (Doc. No. 44-1 at 1) (emphasis added). In its supplementary response to interrogatories, Plaintiff answered: "The crates were loaded onto the defendant LMP's trailer and secured to LMP's trailer by the defendant LMP Trucking's employee who requested assistance from 'FB Granite.' *Freddie, the proprietor's full legal name is unknown to [Plaintiff] as well as his home address."* (Doc. No. 44-2 at 1) (emphasis added). Plaintiff argued at the latest hearing that "Fredy" was disclosed in its Rule 26 disclosure and that Defendant had equal access to him. Defendant highlights that Plaintiff's Pretrial Witness List (Doc. No. 42) lists Francisco Pacas as its first named witness, with an address of one of the attorney's representing Plaintiff. While Defendant assumes this is a form of ambush, it is equally likely that Defendant was only recently made aware of Fredy's full name and is not yet aware of his address.[1] In consideration of all the factors, the Court finds that Fredy's affidavit should not be excluded from evidence.

## 2. Specific Objections in Fredy's Affidavit

Defendant also raises specific objections to Fredy's affidavit. The Court will address each objection in turn.

First, Defendant objects to the following statements because they are ambiguous: "Once the pallets of stone were loaded on the trailer, I inspected them and they were in good condition"; and "I did not secure the pallets to the trailer as this was done solely by LMP's driver." (Doc. No. 44 at 5–6). Defendant additionally argues that photographs contradict the second statement because they show several people tending to the trailer. That assertion is not persuasive, because the photo itself is ambiguous. The Court disagrees with Defendant's characterization of the statements and finds that these statements are admissible.

---

[1] Indeed, at the hearing on the pending motions, Plaintiff's counsel argued that it had no more information available than it disclosed to Defendants.

Defendant next objects to Fredy's statement that "[t]he load, once on the trailer, is always secured by the driver. He is like the captain of the ship. In all my years of being in this business I have never secured the pallets to the trailers. This is always done by the driver." Defendant argues that this statement is conclusory, constitutes expert testimony, and is contradicted by photographs. Again, the Court is unpersuaded by Defendant's arguments. Fredy may rely on his years of experience packaging and loading cargo, nor are such statements (outside of the "captain of the ship" portion which is stricken) legal conclusions. Moreover, as previously discussed, the photographs to which Defendant refers are neither clear nor instructive, and do not obviously contradict Fredy's statement. The Court finds these statements admissible.

Defendant also objects to the following pair of statements because they are not "based on personal knowledge" and constitute speculation (*id.* at 7): "I took my own car and followed the LMP tractor and trailer about 30 minutes behind him all the way to Oklahoma"; and "During the entire trip up to Dallas I never witnessed the driver stop to tighten his load and re-secure the pallets." (*Id.* at 6). The Court finds that these statements are, in fact, based upon personal knowledge and therefore do not constitute speculation. While far from persuasive, the statements are relevant because they create a fact issue as to whether the driver stopped on the way to Dallas, which goes to whether he exercised a reasonable degree of care in operating the truck.

Defendant further objects to the following statements because they are hearsay or constitute expert testimony: "He notified me that the load had shifted. The truck was northbound on the Stemmons Fw. Near the intersection of Stemmons Fwy and Empire Central St. through Dallas at the time of the shifting." (*Id.* at 7–8). The Court concludes that these statements are not being offered for the truth of the matter asserted but instead show that Fredy was aware of when and where the driver was going to pull over. Moreover, to the extent Defendant argues that that the

load "shift" is a technical term requiring expert testimony, the Court calls attention to the fact that Defendant's own non-expert witness uses the same term in his declaration. The statements are, therefore, admissible.

Defendant also objects to the following statements as constituting expert testimony: "When I got out of my car to look at the scene it appeared that the pallets had tilted over because it looked like they were not secured properly for the journey" and "the pallets fell over." (*Id.* at 8–9). Again, the Court finds that Fredy's observations reflect his fifteen or more years making pallets and convey understandable concepts not so technically involved as to require an expert witness. The Court finds they are admissible.

Defendant objects next to statements on the basis that they are irrelevant and speculative: "I have been making pallets for stone travel in excess of 15 years and have never had a pallet break"; and "I have never had another incident like the one involved in this case because all the other drivers I have worked with secure their load properly." (*Id.* at 8). The Court finds that the phrase, "because all the other drivers I have worked with secure their load properly" is, indeed, impermissible and is hereby excluded. This is a conclusion and represents facts about which he could have no personal knowledge. It is also speculation, for which he has no evidence to support, and irrelevant. The rest of the statements, however, are admissible as they are based on his personal knowledge.

Finally, Defendant objects to Fredy's statement about the contract: "The contractor rejected it [the stone] . . . the contract between Houston Granite and Marble and the builder in Oklahoma was cancelled." (*Id.*). Defendant posits no sufficient reasons to exclude this statement. It is not hearsay nor is Fredy required by any rule of evidence to explain why the stone was rejected, as Defendant argues. The statement is admissible.

### 3.  Uncaptioned Photographs

Defendant objects to Plaintiff's "Exhibit 2A," (Doc No. 39-3) which consists of photographs. (Doc. No. 44 at 9). According to Fredy's affidavit, the photographs are "pictures of the scene" from when the driver pulled over outside of Dallas because the load shifted and the pallets tilted. (Doc. No. 39-2 at 2). Defendant urges that the photographs are unauthenticated because Fredy did not testify that he took the photos or explain when they were taken. The Court rejects this argument and concludes Fredy's affidavit is sufficient to authenticate the photos. While Plaintiff does not specifically state when the photos were taken or who took them, Fredy does assert that they are pictures of the scene and makes clear that they were taken when the truck was pulled over outside of Dallas in an Office Depot lot. The clear inference is that they were taken when the load had shifted such that the driver was forced to pull over. Federal Rule of Evidence 901 provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Section 901(b) allows for a witness with knowledge to testify that a matter is what it is claimed to be. Here, Fredy has identified the photographs as the scene of the truck pulled over outside of Dallas when the load allegedly shifted, and Defendant has failed to establish a basis for objection. *See Coates v. EC & R Dev., L.L.C.*, SA-13-CV-255-DAE, 2014 WL 5517805, at *5 (W.D. Tex. Oct. 31, 2014); *Jones v. Stephens*, 3:14-CV-344-P (BH), 2015 WL 10767523, at *13 (N.D. Tex. Nov. 20, 2015), report and recommendation adopted, 3:14-CV-344-M (BH), 2016 WL 2346772 (N.D. Tex. May 4, 2016).

### 4.  John Shaw's Affidavit and Emails and John Sykoudis's Affidavit

The Court need not address these objections, because it did not rely on or consider the contested evidence in deciding this motion. The only relevant document that the Court considered

is the "Form for Presentation of Loss and Damage Claim" that was attached to Sykoudis's affidavit, which Defendant specifically exempted from its objections because the form is clearly authenticated. (Doc. No. 44 at 10–11); *see United States v. Jones*, 554 F.2d 251, 252 (5th Cir. 1977). ("It is sufficient that the witness be able to identify the record as authentic and specify that it was made and preserved in the regular course of business"). Moreover, the form is signed by Sykoudis himself. (Doc. No. 44 at 10–11).

B.  State Law Claims

First, the Court grants summary judgment as to Plaintiff's "state law claims" relating to negligence because they are preempted by the Carmack Amendment, 49 U.S.C. § 14706. (Doc. No. 1-5 at 5). The Carmack Amendment governs a motor carrier's liability to a shipper for loss of, or damage to, an interstate shipment of goods. *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306 (5th Cir. 1993). It is "the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003). Here, Plaintiff was a "shipper" or "consignor," pursuant to 49 U.S.C. § 80101(2); Defendant was a "motor carrier," as defined in 49 U.S.C. § 13102(14); and Plaintiff alleged that the goods transported were damaged in transit and sued Defendant for damages. Therefore, the claims fall squarely under the Carmack Amendment. Moreover, Plaintiff concedes the Carmack Amendment "supersedes and preempts state law causes of action in this case." (Doc. No. 39 at 7). The Court therefore grants the Defendant summary judgment as to Plaintiff's "state law claims." Relatedly, Plaintiff's claim for attorney fees is hereby dismissed on summary judgment as such relief is not available under the Carmack Amendment. *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 877 (5th Cir. 1996); *Global Tech. Enters. V. 4 Way Transp. LLC*, 2017 U.S. Dist. LEXIS 215762, at *10 (N.D. Tex. 2017).

C.  Carmack Claims

The Court now turns squarely to the Carmack claims. To establish a prima facie case of negligence under the Carmack Amendment, a shipper must demonstrate: (1) delivery [to the carrier] of the goods in good condition; (2) receipt by the consignee of less goods or damaged goods; and (3) the amount of damages. *Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 479 (5th Cir. 2006) (citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003); *Accura*, 98 F.3d at 877; *Johnson & Johnson v. Chief Freight Lines Co.*, 679 F.2d 421, 421 (5th Cir. 1982)). Once the shipper establishes a prima facie case, there is a rebuttable presumption of negligence on the part of the carrier. *Man Roland*, 438 F.3d at 479 (citing *Frosty Land Foods Int'l v. Refrigerated Transp. Co.*, 613 F.2d 1344, 1346–47 (5th Cir. 1980)). To overcome this presumption of negligence, the carrier must show that (1) it was free from negligence, and (2) the damage or loss to the cargo was caused by "(a) [an] act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Johnson & Johnson v. Chief Freight Lines Co.*, 679 F.2d 421, 422 & n.1 (5th Cir. 1982) (citing *Mo. Pac. R.R. v. Elmore & Stahl*, 377 U.S. 134, 137, 84 S. Ct. 1142, 12 L. Ed. 2d 194 (1964)). Defendant contends summary judgment is appropriate because Plaintiff cannot carry its burden to establish a prima facie case under the Carmack Amendment, and because it was free from negligence and the damage resulted from the acts of the shipper. (Doc. No. 33 at 13–15).

**1.  Prima Facie Case**

*a.  Delivery to the carrier of the goods in good condition*

The Fifth Circuit has held that a bill of lading is prima facie evidence of delivery of goods in good condition. *Accura Systems*, 98 F.3d at 878. That said, when a bill of lading contains an "apparent good order" clause, it is evidence of delivery in good condition "only as to those portions

11

of the shipment which are visible and open to inspection." *Id.* For goods that are not available for inspection on delivery to the carrier, the plaintiff bears the burden to submit "'other substantial and reliable proof' that the goods were tendered to the carrier in good condition." *Fraser-Nash v. Atlas Van Lines, Inc.*, 534 F. Supp. 2d 729, 732 (S.D. Tex. 2008) (quoting *United Van Lines, LLC v. Marks*, 404 F. Supp. 2d 954, 958 (S.D. Tex. 2005)). Here, Plaintiff bears the burden to submit other "'adequate proof' of delivery in good condition, or proof 'by a preponderance of the evidence'" if at least some of the cargo was not open for inspection. *Marks*, 404 F. Supp. 2d at 958 (quoting *Accura Systems*, 98 F.3d at 878).

Defendant argues that Plaintiff has no evidence to support the first element of its prima facie case: the 49 countertops were delivered to LMP in good condition. (Doc. No. 33 at 13). First, Defendant emphasizes that the bill of lading had an "apparent good order" clause. (*Id.*). Defendant then provides Taylor's affidavit, which states that Plaintiff loaded the cargo onto the trailer and built the crates in Taylor's absence, so Taylor was unable to inspect the cargo during the loading process. (Doc. No. 33-5 at 22). Moreover, Taylor states that the crates obscured the condition of the individual slabs, so he was not able to inspect the entire cargo load at any time prior to departure. (*Id.*). Therefore, Defendant argues that the bill of lading—with its apparent good order clause—is insufficient to establish Plaintiff's case because it is only sufficient evidence to establish a prima facie case as to the portions of the cargo visible and open to inspection. (Doc. No. 33 at 13).

Plaintiff argues that it has established the element that the goods were delivered to the carrier in good condition. First, it points to the "clean" bill of lading, which was signed by the shipper and indicates that there was no damage to the cargo at the time of initial receipt by Defendant. (Doc. No. 39 at 3). Second, Plaintiff submits evidence that the cargo was in good

condition via Fredy's affidavit, which states that he inspected the countertops after he packaged and loaded them and found that they were in good condition. (*Id.*). Third, Plaintiff submits photos allegedly taken by Fredy, apparently from when the driver stopped outside of Dallas because he felt the load that show the countertops *were* available for inspection and were not obscured.

The Court initially finds that the photos submitted by Plaintiff do not as a matter of law establish that the cargo was fully available for inspection. Since the Court is unable to determine that the countertops were open and available for inspection, Plaintiff must produce "other substantial and reliable proof that their [cargo] were tendered to [shipper] in good condition" apart from the bill of lading. *Glob. Tech. Enters. v. 4 Way Transp. LLC*, Civil Action No. 3:16-CV-01601-N, 2017 U.S. Dist. LEXIS 215762, at *8 (N.D. Tex. 2017); *see also United Van Lines, LLC v. Marks,* 404 F. Supp. 2d 954, 958 (S.D. Tex. 2005). Fredy's affidavit is based on his personal knowledge of the goods. He fabricated the packaging, packaged, and loaded the goods onto the trailer. The Court holds that Fredy's affidavit is sufficient evidence to establish a genuine issue of material fact that the goods were delivered to Defendant in good condition.

### b.   *Receipt by the Consignee of Less Goods or Damaged Goods*

Defendant argues that Plaintiff has no evidence to prove the granite and marble countertops arrived at consignee in damaged condition. (Doc. No. 33 at 14). Defendant acknowledges that the consignee refused to sign the bill of lading upon delivery of the cargo in Stillwater, OK, but highlights that the bill of lading does not indicate damage to cargo upon deliver. (Doc. No. 33-2). Plaintiff offers photographs of the cargo allegedly taken by Fredy when the truck stopped in Dallas after the load shifted as evidence that shows the damage to the countertops. (Doc. No. 39-3). Plaintiff also offers Fredy's affidavit, which describes what happened when the truck stopped in Dallas because the load shifted and the "pallets had tilted over":

A forklift was ordered to the scene along with a clamp and the salvageable stone was loaded back on the truck . . . *The stone that was not salvageable was thrown in a dumpster at the scene where the pallets fell over. The rest* was trucked on up to Oklahoma. I followed the driver there and presented the stone to the contractor. The contractor rejected it. The stone was left on the job site and the contract between Houston Granite and Marble and the builder in Oklahoma was cancelled.

Doc. No. 39-2 at 2) (emphasis added). Fredy's personal knowledge of the unsalvageable goods certainly calls into question Defendant's assertion that there is no evidence of any missing or damaged goods. The Court concludes that Plaintiff's evidence is sufficient to create a fact issue as to the damaged—or missing—goods such that summary judgment is inappropriate.

        *c.   Amount of Damages*

Defendant asserts that Plaintiff has no evidence of the amount of damages sustained. (Doc. No. at 14). In response, Plaintiff refers to the Court to the affidavit of John Sykoudis, the records custodian for the business books and records of Plaintiff, for evidence of the amount of damages. (Doc. No. 39-6 at 2). The Court concludes that Plaintiff presented evidence of the amount of damages in its "Form for Presentation of Loss and Damages Claim" that it sent to co-defendant DRT, which claims the damages are $249,414.00. (*Id.* at 3). Thus, Plaintiff has submitted sufficient evidence to establish a genuine issue of material fact as to the amount of damaged goods.

    **2.   Affirmative Defense**

Defendant argues that even if Plaintiff can prove the essential elements of its Carmack claim, Defendant can overcome the rebuttable presumption of negligence, because it was not negligent and any damage to the cargo was caused by the actions of Plaintiff or those acting on Plaintiff's behalf. (Doc. No. 33 at 14). First, Defendant cites to Taylor's affidavit to prove that he was not negligent in the selection, securing, or checking of the cargo straps, nor in operating the tractor trailer during transportation of the cargo. (Doc. No. 33-5 at 1–6). Notably, Taylor states

that he stopped in Huntsville prior to Dallas to check on the cargo as part of his duty to ensure the straps were secure. (*Id.* at 2).   Second, Defendant refers the Court to Taylor's affidavit to show that Plaintiff alone was responsible for loading the cargo onto the trailer, as well as designing and building the custom crates for the cargo. (Doc. No. 33 at 17). It also points the Court to photographs of the broken crates to show the *crates* failed. (*Id.*).

Plaintiff submits evidence that is sufficient to create a fact issue as to Defendant's negligence. Plaintiff presents Fredy's affidavit, wherein he states that when the trailer stopped in Dallas, "it appeared that the pallets had tilted over *because it looked like they were not secured properly for the journey.*" (Doc. No. 39-2 at 2). In other words, Plaintiff has presented evidence that it was the negligence of the Defendant, whose job it was to *secure* the crates on the trailer, not the negligence of the loaders of the cargo, that caused the crates to tip over, and this creates a fact issue as to negligence. The Court notes that Fredy also stated that he has "been making pallets for stone for travel in excess of 15 years and have never had a pallet break." (*Id.*). Additionally, Fredy states that he was following the truck the entire time, albeit at a great distance, and it never stopped at all before arriving in Dallas, directly contradicting Taylor's affidavit.  (Doc. No. 39-2 at 1). Thus, the Court concludes that summary judgment is inappropriate.

D. Limitation of Liability

The Fifth Circuit has adopted the Seventh Circuit's four-point *"Hughes* test" for determining whether a carrier has limited its liability under the Carmack Amendment. *Rohner Gehrig Co., Inc. v. Tri-State Motor Transit*, 950 F.2d 1079, 1081 (5th Cir. 1992). Under the *Hughes* test, Defendant must meet four requirements: "1. Maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; 2. Obtain the shipper's agreement as to her choice of liability; 3. Give the shipper a reasonable opportunity to choose between two or more levels of

liability; and 4. Issue a receipt or bill of lading prior to moving the shipment." *Johnson v. Bekins Van Lines Co.*, 808 F. Supp. 545, 547-48 (E.D. Tex. 1992). Statutory changes have altered the first requirement such that now, the shipper has the burden to request a copy of the carrier's tariff. *Gulf Rice Ark., LLC v. Union Pac. R.R. Co.*, 376 F. Supp. 2d 715, 722 (S.D. Tex. 2005). Moreover, if the bill of lading incorporates by reference the carrier's tariff, the shipper is deemed to have constructive knowledge of the terms. *Id.* Concerning the second two requirements, the Fifth Circuit has stated: "The choice of liability is inextricably intertwined with a reasonable opportunity to choose." *Rohner*, 950 F.2d at 1083.

Defendant argues that its liability, if any, is limited by its liability coverage of $100,000 because it has met the four requirements to validly limit its liability for damages to Plaintiff's cargo. It argues that the first condition is satisfied because Plaintiff failed to request a copy of its tariff, and the tariff was clearly incorporated by reference in the bill of lading, which reads: "*RECEIVED, subject to the classifications and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading.*" (Doc. No. 33-1). The bill of lading also easily satisfies the fourth requirement.

Regarding the second and third requirements, the "shipper's agreement" as to the choice of liability and the shipper having a "reasonable opportunity" to choose the liability level, Defendant argues that Plaintiff was on notice of the liability limitation and given the opportunity to change the level. First, Defendant refers the Court to the email correspondences between Plaintiff and the transportation broker (DRT), which always included a conspicuous, bold, red, warning of the carrier's limitation of liability. The emails included the following warning:

> Quotes are limited to the carrier's insurance liability limitations. Shipper/client *has the responsibility to notify DRT of product over . . . $100,000 for truckload shipments.* Failure to notify DRT of product values exceeding the above may affect the shipper's ability to collect full value for lost and or damaged product.

16

(Doc. No. 33-7 at 2) (emphasis added). Moreover, the emails (and the warning) originated more than two weeks before shipment. Second, Defendant argues that the bill of lading itself included an option to select rates and liability based on "agreed or declared" value of goods being shipped, but Plaintiff opted out of this choice. (Doc. No. 33-1).

Plaintiff's response to Defendant's argument is only that Defendant "has not shown any evidence wherein it had an agreement with DRT to agree to such a reduction or limitation of liability and therefore Plaintiff's case against [Defendant] should not be limited to this lower end of liability." (Doc. No. 39 at 7). At oral argument, however, Plaintiff essentially conceded the validity of the limitation argument.

Courts have found that when a bill of lading contains a "declared-value box," which includes blanks for shippers declare a value for their goods, this "provides an opportunity for shippers to elect a liability level other than that outlined in the tariff." *Haemerle v. All States Shipping, LLC*, 3:11-CV-1986-N, 2013 WL 12284642, at *5 (N.D. Tex. Feb. 25, 2013). Similarly, courts have found that when a carrier's limiting terms are incorporated into the governing contract between the parties the shipper is deemed to have constructive knowledge of the terms. *See Gulf*, 376 F.Supp. 2d at 722. Here, the bill of lading both included a clearly demarcated value box and incorporated the tariffs. Moreover, the Plaintiff was on notice of the liability limitation from numerous email exchanges featuring a bold, red, and italicized warning. *See Rohner*, 950 F.2d at 1084 (considering type face and font in determining whether there was "fair opportunity"). It is further undisputed that Plaintiff did not ask for proof of tariff and that there is a signed bill of lading. Therefore, the Court finds that Defendant validly limited its liability and Plaintiff is bound by the limitation of liability based on accepted tariffs and liability coverage of Defendant, which at the time was $100,000.

17

## IV.   Conclusion

The Court DENIES the Motion to Strike (Doc. No. 43) and DENIES the Motion to Dismiss as MOOT. (Doc. No. 29). The Court GRANTS in part as to the limitation of liability and the state law claims and DENIES in part as to the Carmack claims, Defendant's Motion for Summary Judgment. (Doc. No. 33). The Court also GRANTS Defendant's Motion for Leave to File Additional Discovery (Doc. No. 32) and has entered a scheduling order, which includes dates agreed to by the parties. (Doc. No. 52).

Signed at Houston, Texas, this ___9___ day of June 2021.

Andrew S. Hanen
United States District Judge

18